UNITED STATES of America

v.

Pastor ORTIZ–GONZALBO, Defendant.

No. 95 Cr. 387 (MBM).

United States District Court,
S.D. New York.

Nov. 20, 1996.

Mary Jo White, United States Attorney for the S.D. of New York, Steven P. Heineman, Assistant United States Attorney, New York City, for the U.S.

Jan A. Rostal, New York City, for Defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Pastor Ortiz–Gonzalbo stands accused of reentering the United States without authorization after having been deported in 1989, in violation of 8 U.S.C. § 1326. His alleged unlawful reentry was detected after his April 1996 arrest and fingerprinting by New York City police officers, and the consequent disclosure that his fingerprints matched those in the file associated with his deportation. He moves to suppress the fingerprints taken in connection with his state arrest on the ground that that arrest was not based on probable cause, and seeks a hearing into the circumstances of the arrest. However, as explained below, it appears that regardless of whether there was probable cause for his arrest, there is no basis for suppressing the fingerprint evidence, and the motion accordingly is denied.

## I.

Defendant's motion is based entirely on the affidavit of his attorney, who attaches a copy of the Criminal Court complaint, the only charging instrument in the state proceeding. That complaint, sworn to May 1, 1996 by a New York City detective, gives the following as the basis for defendant's warrantless arrest for second degree murder and possession of a weapon in connection with an incident that occurred on February 12, 1994, about two years earlier:

> Deponent states that he is informed by Det. William Walsh of the NYPD that a witness known to the District Attorney's office observed the defendant shoot Jorge Almonte Suero with a shotgun in the chest thereby causing his death.

(Rostal Aff., Ex. C) Which is to say, one detective told another that he had spoken to a witness whose identity was known, who said that he or she saw the defendant shoot the victim two years earlier. Counsel also presents a document reflecting that the state court charge was dismissed for failure to secure an indictment within the period required by state law. (*Id.*, Ex. B)

Counsel concludes from these documents that defendant's warrantless state arrest was based on unreliable second-hand hearsay that later proved insufficient to support further proceedings against him, and at least that a hearing is necessary to determine whether the arrest was based on probable cause. If it was not, she argues, the finger-

prints taken in connection with the arrest must be suppressed on the authority of *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), and *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), both of which directed the suppression of fingerprint evidence when defendants were arrested without a warrant and without probable cause.

The parties dispute how broadly *Davis* and *Hayes* are to be read. The government argues that the holdings in those cases require suppression of fingerprint evidence only when defendants have been arrested without a warrant and without probable cause, and for the purpose of obtaining such evidence. Defense counsel has conceded candidly that there is nothing in the record to suggest that this defendant was arrested simply for the purpose of obtaining his fingerprints (10/22/96 Tr. at 5), but argues that *Davis* and *Hayes* require suppression whenever a warrantless arrest is not supported by probable cause.

## II.

Both *Davis* and *Hayes* arose from arrests for the purpose of obtaining fingerprints, and to the extent there was debate apparent in the opinions of the Court it was about either such arrests or more limited detention for the same purpose. Thus, the majority in *Davis* noted that even *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), had applied the Fourth Amendment to the investigatory stage of a criminal case. 394 U.S. at 726–27, 89 S.Ct. at 1397. The *Davis* majority then continued: "Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment." *Id.* at 727, 89 S.Ct. at 1397. The majority also wrote that because a person's fingerprints are not subject to being destroyed, there is no need for warrantless arrest or detention in order to gather them, and thus "the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context," but left open the possibility that constitutionally permissible procedures might be devised to allow detention for fingerprint-

ing on less than probable cause. *Id.* at 728, 89 S.Ct. at 1398. Justice Harland, concurring, thought it unnecessary to decide the question of whether judicial permission for fingerprinting always was necessary, *id.,* and the dissenting opinions make it plain that their authors, Justices Black and Stewart, opposed suppression even in the circumstance of a warrantless arrest without probable cause for the purpose of obtaining fingerprints. *Id.* at 729, 730, 89 S.Ct. at 1398, 1399.

The same is true of *Hayes,* which concerned an arrest in the first instance solely to obtain the petitioner's fingerprints. 470 U.S. at 812, 814, 105 S.Ct. at 1644, 1645 (stating that the police "decided to visit petitioner's home to obtain his fingerprints or, if he was uncooperative, to arrest him" and "[h]ere, as in *Davis,* there was no probable cause to arrest, no consent to the journey to the police station, and no judicial authorization for such a detention for fingerprinting purposes"). Although the Court refused in *Hayes* to forswear *Davis,* it held out the possibility that "a brief detention in the field for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause," might be constitutionally permissible. 470 U.S. at 816, 105 S.Ct. at 1646. This concession elicited strong objection from the author of *Davis,* Justice Brennan, to what he saw as an advisory opinion on an issue—the permissibility of *Terry*-type stops for fingerprinting—that was not presented by the facts of the case before the Court or argued by the parties. *Id.* at 818–20, 105 S.Ct. at 1647–49. Once again, in *Hayes,* to the extent there was discussion by the majority, or debate, it concerned detention for the purpose of obtaining fingerprints. Not even Justice Brennan, the author of *Davis,* suggested that that case barred the use of fingerprints obtained during any detention later found to have been unjustified, regardless of the initial purpose of such detention.

A leading Fourth Amendment treatise takes the same view of *Davis* as the government does, noting that it involved an illegal arrest "for the purpose of getting ... fingerprints for use in investigation of the crime which prompted the illegal arrest," and argu-

ing that *Davis* "should not be read as declaring that fingerprints taken after an illegal arrest are always inadmissible." Wayne R. LaFave, *Search and Seizure*, § 11.4(g), at 323 (3d ed. 1996).

The parties rely on diverging authority in the Ninth Circuit. The government cites a line of cases ending with *United States v. Guzman–Bruno*, 27 F.3d 420, 421–22 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994), for the proposition that, "[a] defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search," and " 'there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity.' " *Id.* at 421, (quoting *Hoonsilapa v. INS*, 575 F.2d 735, 738 (9th Cir.), *modified on other grounds*, 586 F.2d 755 (9th Cir.1978)). Both *Guzman–Bruno* and *Hoonsilapa* permitted the government to proceed with illegal entry prosecutions based on evidence of the defendants' identity secured as the incidental result of Fourth Amendment violations.

Defendant relies on *United States v. Johns*, 891 F.2d 243 (9th Cir.1989), where a majority of a panel on the same Court held that when officers discovered the identity of two men during a vehicle stop that violated the Fourth Amendment, the marijuana discovered during surveillance found by the district court to have resulted directly from that unlawful stop had to be suppressed as the fruit of unlawful conduct, even though the officers learned nothing during that conduct other than the identity of the men they had stopped. The majority in *Johns* did not discuss *Hoonsilapa, supra*, even though the dissent cited it. 891 F.2d at 247.

■ Defendant argues further that just as it is improper to suppress evidence resulting from an objectively lawful traffic stop even if the subjective intent of the officer was to obtain evidence of a more serious crime, *Whren v. United States*, —— U.S. ——, —— ——, 116 S.Ct. 1769, 1773–74, 135 L.Ed.2d 89 (1996), so too should it be improper to refuse to suppress evidence that resulted from an objectively unlawful arrest simply because the gathering of that evidence was not the subjective intent of the officer. In essence, defendant argues that if an impure mind will not taint the fruit of an objectively lawful act, neither should a pure mind sanctify the fruit of an objectively unlawful act.

■ Defendant's argument appeals to my sense of symmetry, but not to my reading of *Davis* and *Hayes*, where the Court focused its attention squarely on the motive of the arresting officers to obtain fingerprints, and made it plain, at least to my eye, that that motive rationalized its decision. It follows that absent such a motive, there is no requirement under *Davis* and *Hayes* that fingerprint evidence gathered under the circumstances present here be suppressed. The exclusionary rule is a judge-made rule and, as Judge Friendly cautioned in *United States v. Friedland*, 441 F.2d 855 (2d Cir.), *cert. denied*, 404 U.S. 914, 92 S.Ct. 239, 30 L.Ed.2d 188 (1971), judges should be careful in applying it:

> As the Supreme Court has instructed, the exclusionary rule 'is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it,' Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). Courts must neither so narrow the rule as to impair its presumed deterrent effect nor expand it in such a way that, in order to achieve a marginal increment in deterrence, society will pay too high a price. In preserving the requirement of 'standing' in Alderman v. United States, 394 U.S. [165], 171–176, 89 S.Ct. 961, [965–968,] [22 L.Ed.2d 176 (1969),] the Court set its face against one attempt to broaden the exclusionary rule to maximize deterrence. We are confident it would likewise hold that to grant life-long immunity from investigation and prosecution simply because a violation of the Fourth Amendment first indicated to the police that a man was not the law-abiding citizen he purported to be would stretch the exclusionary rule beyond tolerable bounds.

441 F.2d at 861 (footnotes omitted). Unless the state arrest here was motivated by a desire to gather fingerprints, there would be

no deterrent effect to be achieved by suppressing them. However, even assuming *arguendo* that the state arrest here was unlawful, there is no evidence of such motivation. Therefore, a hearing on the lawfulness of the arrest would serve no purpose. To the extent that the majority opinion in *Johns* may suggest a contrary result, I respectfully decline to follow it for the reasons set forth above.

The motion to suppress is denied.

SO ORDERED.