# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3855

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| Martin Guevara-Martinez, | * | |
| also known as Jose Dias-Ibarra, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 15, 2001

Filed: August 20, 2001

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

The government appeals the district court's[1] suppression of fingerprint evidence obtained as the result of an unlawful arrest and detention. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

# BACKGROUND

On January 31, 2000, two Omaha police officers stopped a car in which Martin Guevara-Martinez was a passenger. The officers found methamphetamine in the car and placed Guevara-Martinez under arrest. During the course of the stop, an officer asked Guevara-Martinez for his name. Initially, Guevara-Martinez did not respond at all; he later told the officer that he had no identification. In fact, Guevara-Martinez had identification. The officer removed an ID from Guevara-Martinez's wallet, and determined that it did not match Guevara-Martinez's appearance.

The officers transported Guevara-Martinez to the Omaha jail. Suspecting that he might be an illegal alien, the officers informed a special agent of the United States Immigration and Naturalization Service (INS) of the arrest. The agent went to the jail to interview Guevara-Martinez. Guevara-Martinez gave the agent the false name of Jose Diaz-Ibarra, and admitted that he did not have permission to be in the United States.

On the day following the arrest, after the INS interview, Omaha police took Guevera-Martinez's fingerprints. Nothing in the record shows that Guevara-Martinez consented to the fingerprinting. Ultimately, the fingerprints revealed Guevara-Martinez's true identity, which linked him to his INS file. His INS file indicated that he had previously been deported from the United States.

On February 24, 2000, Guevara-Martinez was indicted for possession with intent to deliver methamphetamine. That charge was later dismissed, however, because the district court ruled that the January 31 traffic stop was illegal, and suppressed the drugs seized during the stop. The government did not appeal the district court's ruling that the traffic stop was illegal.

On June 22, 2000, seven days after the government dismissed the drug charge, Guevara-Martinez was indicted a second time, this time for being an illegal alien found in the United States after deportation, in violation of 8 U.S.C. § 1326. Guevara-Martinez again moved to suppress all evidence flowing from the illegal traffic stop, particularly his fingerprints and the statements he made about his identity. Alternatively, Guevara-Martinez moved for dismissal on the grounds that the government had an improper motive for the second prosecution (i.e., retaliation for having to dismiss the drug charge).

The government opposed the suppression motion. The government relied upon the Supreme Court's statement that the "body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred," INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984), and two circuit decisions that have applied Lopez-Mendoza to identity-related evidence introduced in criminal proceedings brought under § 1326. See United States v. Roque-Villanueva, 175 F.3d 345, 346 (5th Cir. 1999); United States v. Guzman-Bruno, 27 F.3d 420, 421-22 (9th Cir. 1994).

Distinguishing Lopez-Mendoza, the district court suppressed both the fingerprint evidence and the statements Guevara-Martinez made about his identity.[2] The government filed this interlocutory appeal pursuant to 18 U.S.C. § 3731, challenging only the suppression of the fingerprint evidence.

## DISCUSSION

When a district court grants a motion to suppress evidence, we review its findings of fact for clear error, and its conclusions of law de novo. United States v.

---

[2]The district court did not rule on the motion for dismissal.

Wells, 223 F.3d 835, 838 (8th Cir. 2000). Here we review a legal issue: whether, in a criminal prosecution brought for a violation of 8 U.S.C. § 1326, Lopez-Mendoza requires suppression of fingerprint evidence obtained as the result of an unlawful arrest and detention. We hold that Lopez-Mendoza does not apply, and that the present case is controlled by Davis v. Mississippi, 394 U.S. 721 (1969) and Hayes v. Florida, 470 U.S. 811 (1985). In the absence of evidence that Guevara-Martinez's fingerprinting resulted from routine booking procedures, rather than for the purpose of pursuing INS-related proceedings against him, we conclude that the district court properly suppressed the evidence.

## I.     Lopez-Mendoza

In Lopez-Mendoza, the Supreme Court reviewed two civil cases, both involving deportation proceedings that took place following unlawful arrests. Adan Lopez-Mendoza challenged an immigration court's jurisdiction over his person following his unlawful arrest, but did not object to the admission of evidence offered against him in the proceeding. 468 U.S. at 1040. In contrast, Elias Sandoval-Sanchez didn't object to the immigration court's jurisdiction over him, but rather to the evidence offered against him in the proceeding. Id.

In the jurisdictional case (Lopez-Mendoza), the Court said that the "body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest." Id. at 1039. But the Court addressed the evidentiary case (Sandoval-Sanchez) from a different tack. There the Court acknowledged the "general rule in a criminal proceeding [] that statements and other evidence obtained as a result of an unlawful, warrantless arrest *are suppressible* if the link between the evidence and the unlawful conduct is not too attenuated." Id. at 1040-

-4-

41 (emphasis added).[3]  Thus, the Court's reference to the suppression of identity appears to be tied only to a jurisdictional issue, not to an evidentiary issue.

Notwithstanding the Supreme Court's different approaches to the jurisdictional and evidentiary challenges brought in Lopez-Mendoza, two circuits have applied the Supreme Court's suppression-of-identity reference to evidentiary challenges in criminal proceedings.  See United States v. Roque-Villanueva, 175 F.3d at 346 (holding that neither a person's identity nor his INS file are suppressible in a § 1326 criminal proceeding even if the defendant was illegally stopped); Guzman-Bruno, 27 F.3d at 421-22 (indicating that a defendant's statement of identity need not be suppressed in a § 1326 criminal proceeding merely because it was obtained as the result of an illegal arrest).

One court has concluded, however, that Lopez-Mendoza has no bearing upon the suppression of unlawfully obtained identity-related evidence in a criminal proceeding:

> [T]he Supreme Court language only addresses the jurisdictional concern that the "body" of the defendant is never suppressible, not whether statements by a defendant regarding his identity may be suppressed. This interpretation is supported by an examination of the authorities cited by the Supreme Court: Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) and Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). In Frisbie, the Court held that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction" against his will. 342 U.S. at 522, 72 S.Ct. at 511. The Supreme Court reaffirmed this holding in Gerstein, stating that an "illegal arrest or detention does not void a subsequent conviction." 420 U.S. at 119, 95 S.Ct. at 865. These cases deal with jurisdiction over

_____

[3]Ultimately, the Court found the general criminal rule inapplicable to civil deportation proceedings.  Id. at 1051.

the person, not evidence of the defendant's identity illegally obtained. The language in <u>Lopez-Mendoza</u> should only be interpreted to mean that a defendant may be brought before a court on a civil or criminal matter even if the arrest was unlawful.

<u>United States v. Mendoza-Carrillo</u>, 107 F. Supp. 2d 1098, 1106 (D.S.D. 2000).

The district court found the reasoning in <u>Mendoza-Carillo</u> more persuasive than the broad interpretation given <u>Lopez-Mendoza</u> by the Fifth and Ninth Circuits. So do we. We find it significant that the Supreme Court didn't distinguish between identity-related evidence and other types of evidence when discussing Sandoval-Sanchez's evidentiary challenge. The Court simply referred to the "general rule in a criminal proceeding." 468 U.S. at 1040. If the Supreme Court meant to exempt identity-related evidence in a criminal proceeding from the "general rule," we believe the Court would have said so while discussing the evidentiary challenge, not the jurisdictional challenge. Our belief is strengthened by the fact that the evidence that Sandoval-Sanchez challenged, INS Form I-213, <u>see</u> <u>Lopez-Mendoza v. INS</u>, 705 F.2d 1059, 1062 (9th Cir. 1983), probably contained identity-related evidence. <u>See</u> INS Form I-213 (Rev. 4/1/97) (including spaces for name, aliases, birthdate, and checkboxes to indicate whether an alien has been photographed or fingerprinted).

Furthermore, the identity-related evidence that the district court suppressed was fingerprint evidence. Prior to <u>Lopez-Mendoza</u>, the Supreme Court twice applied the exclusionary rule to fingerprint evidence obtained as the result of unlawful arrests and detentions. <u>See</u> <u>Davis</u>, 394 U.S. at 727; <u>Hayes</u>, 470 U.S. at 815. Because <u>Lopez-Mendoza</u> doesn't indicate that <u>Davis</u> and <u>Hayes</u> are overruled, we are bound to apply those earlier cases. <u>See</u> <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997) (warning that the circuit courts shouldn't conclude that more recent Supreme Court cases have, by implication, overruled earlier precedents); <u>State Oil Co. v. Khan</u>, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

We conclude that <u>Lopez-Mendoza</u>'s statement about the suppression of identity only refers to jurisdictional challenges, not to fingerprint evidence challenged in a criminal proceeding. Therefore, we must determine whether the "general rule in a criminal proceeding" applies, and if so, whether it requires exclusion of the fingerprint evidence under the circumstances present in this case.

## II. Fingerprint Evidence and the Exclusionary Rule

In <u>Davis</u>, police officers in Meridian, Mississippi, unlawfully arrested and confined a young black man in order to get his fingerprints and compare them to prints found at the scene of a sexual assault. 394 U.S. at 722-23. The State of Mississippi argued that the exclusionary rule should not apply to fingerprint evidence because of its inherent trustworthiness. Although the Supreme Court questioned whether fingerprint evidence may be less subject to the exclusionary rule than other types of evidence, the Court nonetheless held that "[d]etentions for the sole purpose of obtaining fingerprints are . . . subject to the constraints of the Fourth Amendment." <u>Id.</u> at 727.

The Supreme Court revisited the issue sixteen years later in <u>Hayes</u>, which also involved a young black man unlawfully detained by police who wanted his fingerprints. 470 U.S. at 813. The Court again suggested that there might be circumstances where the exclusionary rule would not require suppression of fingerprint evidence: "[n]one of the foregoing implies that a brief detention in the field for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause, is necessarily impermissible under the Fourth Amendment." <u>Id.</u> at 816. The Supreme Court nonetheless reaffirmed the <u>Davis</u> holding: "None of [our] cases have sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes, whether for interrogation or fingerprinting, absent probable cause or judicial authorization." <u>Id.</u> at 815.

Since <u>Davis</u> and <u>Hayes</u> both suggest that fingerprint evidence has less Fourth Amendment protection than other types of evidence, those two cases "should not be read as declaring that fingerprints taken after an illegal arrest are always inadmissible." Wayne R. LaFave, <u>Search and Seizure</u>, § 11.4(g) at 323 (3d ed. 1996). But should the exclusionary rule apply to the fingerprint evidence involved in this case? Admittedly, the facts aren't quite like those in <u>Davis</u> and <u>Hayes</u>, because the police did not detain Guevara-Martinez just to get his fingerprints. But neither were the fingerprints obtained under circumstances the Supreme Court suggested might enjoy less Fourth Amendment protection (i.e., a brief detention in the field unsupported by probable cause).

We reject the government's contention that <u>Davis</u> and <u>Hayes</u> are inapposite because the police did not detain Guevara-Martinez for the sole purpose of getting his fingerprints. We apply the exclusionary rule whenever evidence has been obtained "by exploitation" of the primary illegality instead of "by means sufficiently distinguishable to be purged of the primary taint." <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963) (quotation omitted). Evidence can be obtained "by exploitation" of an unlawful detention even when the detention is not for the sole purpose of gathering that evidence.

We conclude that officers obtained Guevara-Martinez's fingerprints by exploiting his unlawful detention, instead of by means sufficient to have purged the taint of the initial illegality. First, we note that Guevara-Martinez did not consent to the fingerprinting. We often find that consent is sufficient to purge the taint of an unlawful detention, <u>e.g.</u>, <u>United States v. Lyton</u>, 161 F.3d 1168, 1171 n. 3 (8th Cir. 1998); <u>United States v. Ramos</u>, 42 F.3d 1160, 1164 (8th Cir. 1994), and so the absence of consent counsels in favor of applying the exclusionary rule.

Second, the fingerprints were obtained *during* the unlawful detention, not as the result of a *subsequent* investigation. Cf. <u>United States v. Watson</u>, 950 F.2d 505, 508

-8-

(8th Cir. 1991) ("[W]here a law enforcement officer merely recommends investigation of a particular individual based on suspicions arising serendipitously from an illegal search, the causal connection is sufficiently attenuated so as to purge the *later investigation* of any taint from the original illegality.") (emphasis added). Thus, there is little, if any, attenuation between Guevara-Martinez's unlawful detention and the fingerprinting.

Third, we find it significant that the fingerprinting occurred only after the INS had interviewed Guevara-Martinez. The government has offered no evidence that the fingerprints were obtained as a matter of course through routine booking procedures, rather than for the purpose of assisting the INS investigation. Cf. People v. McInnis, 494 P.2d 690, 693 (Cal. 1972) (holding that a photograph taken during routine booking procedures following an illegal arrest could be used in connection with an unrelated charge); Paulson v. State, 257 So. 2d 303, 305 (Fla. Dist. Ct. App. 1972) (holding that fingerprints routinely taken after illegal arrest could be used in a subsequent prosecution for another crime). The absence of evidence that the fingerprinting resulted from routine booking, and the concomitant inference that an INS-related purpose motivated the fingerprinting, also counsel in favor of applying the exclusionary rule.

A district court decision upon which the government relies, United States v. Ortiz-Gonzalbo, 946 F. Supp. 287, 289-90 (S.D.N.Y. 1996), aff'd on other grounds, 133 F.3d 908 (2d Cir. 1997) (unpublished table decision), can and should be distinguished. In Ortiz-Gonzalbo, the defendant was arrested for second-degree murder on a New York state charge and fingerprinted. It was subsequently discovered that his fingerprints matched those in an INS deportation file, and he was charged in federal court under § 1326. He moved to suppress the fingerprint evidence in the federal proceeding on the ground that the state arrest was unlawful. 946 F. Supp. at 287. The district court rejected the challenge, holding that "[u]nless the state arrest here was

motivated by a desire to gather fingerprints, there would be no deterrent effect to be achieved by suppressing them." Id. at 289-90.

Here, the authorities desired to gather the fingerprints, and were able to take advantage of the unlawful detention in order to get the fingerprints. Under these circumstances, we believe that suppressing the fingerprint evidence will achieve a deterrent effect.

As a final, separate matter, the government points out that a set of untainted fingerprints can be obtained in the civil deportation proceedings that Guevara-Martinez will inevitably face. Since Guevara-Martinez can be recharged using the new set of fingerprints, the government asks us to ignore its use of tainted evidence in this case. We decline to reverse the district court on this alternate ground. In Davis, the Supreme Court refused to affirm a conviction because the authorities there could have used a second set of prints that were validly obtained, stating that "[t]he important thing is that those administering the criminal law understand that they must [obtain the evidence the right way]." 394 U.S. at 726 n.4 (quoting Bynum v. United States, 262 F.2d 465, 469 (D.C. Cir. 1958)).

For the reasons stated, we affirm the district court's suppression order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-