# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-1459

———————

United States of America,    *
                             *
Appellee,                    *
                             *    Appeal from the United States
v.                           *    District Court for the
                             *    Southern District of Iowa.
Jose Perez-Perez, also known as *
Felix Zarate-Velazquez,      *
                             *
Appellant.                   *

———————

Submitted: June 11, 2003

Filed: July 30, 2003

———————

Before MORRIS SHEPPARD ARNOLD, HEANEY, and RILEY, Circuit Judges.

———————

RILEY, Circuit Judge.

Jose Perez-Perez (Perez) entered a conditional guilty plea to illegal reentry following deportation, in violation of 8 U.S.C. § 1326(a). The district court[1] sentenced him to 46 months imprisonment. Perez appeals his conviction and sentence, arguing (1) all evidence of his identity should have been suppressed; (2) his constitutional and statutory rights to a speedy trial were violated; and (3) the statutory

---

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

sentence enhancement based on his prior conviction violates <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). We affirm.

## I. BACKGROUND

On April 3, 2002, Perez was arrested during the execution of a search warrant at a business, Kora Fashions. Perez drove into the parking lot and the agents of the drug task force immediately took him inside. An Immigration and Naturalization Service (INS) agent, Jose Aponte (Aponte), informed Perez of his <u>Miranda</u> rights in Spanish and asked Perez questions. Perez incriminated himself by admitting his identity and legal status as an alien. Since Perez was taken into custody only because of his appearance outside a business during business hours, the district court held law enforcement did not have probable cause to arrest Perez, and his arrest was an illegal seizure under the Fourth Amendment.

Perez was held in the Polk County jail on state drug charges. On April 16, civil deportation proceedings began and Perez was in INS custody. Aponte determined Perez had been involved in a 1996 state forgery crime and informed state officials. Without the knowledge of the U.S. Attorney's Office, Perez was then returned to Polk County custody, where he was arraigned and later pled guilty to the forgery.

On April 24, a federal grand jury indicted Perez for illegal reentry following deportation. Because he was in state custody, Perez was not arraigned on the federal charge until July 11, 2002. After the district court denied Perez's motion to dismiss, and denied, in part, his motion to suppress identity evidence, Perez entered a conditional plea of guilty on November 1, 2002, and on February 7, 2003, was sentenced under 8 U.S.C. § 1326(a) and (b)(2).

## II. DISCUSSION

### A. Fourth Amendment - Identity Evidence

We will not reverse the district court's decision regarding a motion to suppress "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, the appellate court is left with the definite and firm conviction that a mistake has been made." United States v. Layne, 973 F.2d 1417, 1420 (8th Cir. 1992). On a motion to suppress, we review the district court's findings of fact for clear error; however, we review de novo the district court's ultimate legal conclusions drawn from the facts. United States v. Rodriguez-Arreola, 270 F.3d 611, 615 (8th Cir. 2001).

The matter before us is a legal issue: whether the exclusionary rule requires suppression of identity evidence obtained after an unlawful arrest, even though such evidence was obtained as part of an unrelated legal proceeding. Perez argues all evidence of his identity discovered after his illegal arrest–during the deportation and unrelated state court proceedings–should be suppressed because of his illegal arrest and INS questioning. Although Perez does not challenge the legality of the state forgery charge and conviction, he argues the separate nature of the state proceeding did not act to dissipate the taint of the initial illegal arrest under the attenuation doctrine. The district court held all identity evidence which existed before Perez's arrest and all identity evidence obtained after the start of civil deportation proceedings was admissible because the evidence was not tainted by the unlawful arrest.

It is no surprise "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984). However, identity evidence, specifically fingerprints, taken as a fruit of a Fourth Amendment violation should be suppressed. United States v. Guevara-Martinez, 262 F.3d 751, 756 (8th

Cir. 2001). In <u>Guevara-Martinez</u>, we determined that since the fingerprints were taken during an illegal detention after the suspect talked to an INS agent, rather than part of routine booking, they should be suppressed. We noted, however, "untainted fingerprints" could be obtained in the civil deportation proceeding. <u>Id.</u> We refused to reverse the suppression, even though the untainted prints could be made at any time. <u>Id.</u>; <u>see also</u> <u>Rodriguez-Arreola</u>, 270 F.3d at 618-19 (prosecution may proceed with untainted evidence of identity).

Here, the civil deportation proceeding had already started, providing "untainted" identity evidence. Other untainted identity evidence existed from the state court proceedings. Thus, we affirm the district court's denial of Perez's motion to suppress the identity evidence obtained after the civil deportation proceedings began.

### B. Speedy Trial
#### 1. Speedy Trial Act

"In the context of the Speedy Trial Act, we review the district court's findings of fact for clear error and the district court's legal conclusions de novo." <u>United States v. Van Someren</u>, 118 F.3d 1214, 1216 (8th Cir. 1997). "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by [the excluded delays of] section 3161(h), the information or indictment <u>shall</u> be dismissed on motion of the defendant." <u>United States v. Blankenship</u>, 67 F.3d 673, 675 (8th Cir. 1995) (alteration in original) (quoting 18 U.S.C. § 3162(a)(2)). Essentially, a defendant's trial must occur within 70 days of his indictment or first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). However, certain periods of time may be excluded, including "delay resulting from trial with respect to other charges against the defendant." 18 U.S.C. § 3161(h)(1)(D); <u>see</u> <u>United States v. Goodwin</u>, 612 F.2d 1103, 1105 (8th Cir. 1980) (the period a defendant is "awaiting trial" in state court is excluded).

Perez was indicted for illegal reentry on April 24, 2002. Although Perez was not in attendance, his attorney appeared at the arraignment scheduled for April 26. The arraignment was continued when the district court learned Perez was in state custody. Perez argues the Speedy Trial Act was violated because the speedy trial clock began to run on April 26, and he was not tried by July 5, the 70th day thereafter. However, because Perez was in state custody, he was not arraigned on the federal charge on April 26. Perez was arraigned on the federal charge on July 11, 2002. Therefore, the speedy trial clock began to run on July 11, 2002, pursuant to § 3161(c)(1). Perez acknowledges no other potential violation occurred. Because we find no clear error in the determination of when Perez's arraignment occurred, and no legal error, we affirm the district court's denial of Perez's motion to dismiss the indictment based on a Speedy Trial Act violation.

### 2. Sixth Amendment

It is rare when the Sixth Amendment has been violated, but the Speedy Trial Act has not. See United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002). The Supreme Court identified four factors to consider when applying a Sixth Amendment balancing test to a pretrial delay: the length of delay, the reason for delay, whether the defendant asserted the right to a speedy trial, and whether the defendant suffered any prejudice. Barker v. Wingo, 407 U.S. 514, 530 (1972).

"[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences," and no Sixth Amendment right to a speedy trial arises until charges are pending. Sprouts, 282 F.3d at 1042 (citation omitted). Perez argues "attachment" occurred on April 15, when the U.S. Attorney's office notified the INS of the imminent criminal prosecution. Alternatively, Perez argues attachment occurred either on April 16, when civil deportation proceedings began, or on April 24, when he was indicted.

A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring a speedy trial inquiry. See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992); United States v. Walker, 92 F.3d 714, 717 (8th Cir. 1996) (37 month delay presumptively prejudicial); cf. United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998) (five-month period between detention and trial on drug charges, interrupted by pretrial motions, "was not sufficiently long to be presumptively prejudicial"); United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) (delay just over seven months did not trigger Sixth Amendment analysis). Perez argues the five-month delay between his arrest and the first trial date, September 3, shows presumptive prejudice because of the relatively simple aspects of a § 1326 case. We disagree. Five months is not a presumptively prejudicial delay; therefore, we need not examine the remaining three Barker elements. Doggett, 505 U.S. at 651-52; Sprouts, 282 F.3d at 1043.

Nevertheless, we will respond to Perez's allegations of specific prejudice and intentional delay. Perez argues he was prejudiced because his criminal history score included the state forgery conviction. However, the district court considered the timing of his forgery conviction during sentencing by reducing Perez's criminal history category from IV to III. Perez speculates the district court might have further reduced his criminal history to category II. Such a result is unlikely because the forgery conviction added only one criminal history point, resulting in a total of seven (category IV). Removing the conviction results in six criminal history points (category III). The district court noted that the forgery crime occurred in 1996, but it was not prosecuted until 2002. The district court still determined Perez's criminal history category overstated the seriousness of his past crimes. While he had a serious drug-related conviction from 1996, he had little other criminal history. Furthermore, the district court was free to consider the forgery charge while the charge was pending. See U.S.S.G. § 4A1.3(d). For these reasons Perez suffered no prejudice by the delay.

The district court determined the government did not intentionally delay trial to attain a tactical advantage, a factual finding we review for clear error. There is no evidence the government sought extensions to gain a tactical advantage. The reason for the delay in this case was the pendency of the state charges. Such a delay should not be counted against the government. See Walker, 92 F.3d at 719 (eleven months in state prison for state charges, not used as federal pretrial detention, did not contribute to prejudice). Perez's motions to dismiss and suppress caused additional delay. We find no clear factual error or legal error in the district court's determination.

### 3. Fifth Amendment

Perez also argues the pre-trial delay violated his Fifth Amendment due process right. Although we question the applicability of the Fifth Amendment in the context of any pretrial delay here, this claim fails for the same reasons Perez's other speedy trial claims fail, primarily because Perez did not suffer any "actual and substantial prejudice," and there is no evidence the government intentionally delayed "to gain tactical advantage." See United States v. Brockman, 183 F.3d 891, 896-97 (8th Cir. 1999) (no prejudice from pre-indictment delay causing higher sentencing potential).

### 4. Rule 5(a)

Federal Rule of Criminal Procedure 5(a) requires an arresting officer to take the arrested person without unnecessary delay before the nearest available federal magistrate judge (or, if not available, before a state or local judicial officer authorized by statute). Perez was initially arrested in relation to a state drug charge, then held under an INS detainer when the state prosecutor dismissed the drug charge. Perez argues the INS detention triggered Rule 5(a) on April 15, and he suffered delay until July 11, the date of his federal arraignment. Alternatively, he argues there was even unnecessary delay from April 15 until April 20, when he was transferred to state custody on the forgery charge.

In support of his position, Perez cites <u>United States v. Keeble</u>, 459 F.2d 757 (8th Cir. 1972). In <u>Keeble</u>, an Indian was arrested for disorderly conduct, then questioned by a federal officer regarding a death at the Indian's home. Keeble was not brought before a magistrate judge for 99 hours. The case was remanded to determine whether prejudice from the delay existed, for example by causing him to confess over a day after his arrest. <u>Id.</u> at 759-61. Perez argues he suffered the prejudice of not having his initial appearance earlier, starting the speedy trial clock, thus arguably dooming his speedy trial arguments. Perez seeks dismissal of the indictment as a remedy.

The civil deportation proceedings began on April 15. Civil deportation proceedings do not trigger the criminal rules of procedure, including Rule 5(a). <u>United States v. Noel</u>, 231 F.3d 833, 837 (11th Cir. 2000) (detentions attendant to deportation proceedings are civil in nature; they do not implicate Rule 5(a), which only governs criminal arrests); <u>see</u> <u>United States v. Grajales-Montoya</u>, 117 F.3d 356, 366 (8th Cir. 1997) (INS proceedings do not implicate Speedy Trial Act); <u>see</u> <u>also</u> <u>United States v. Dyer</u>, 325 F.3d 464, 468-70 (3d Cir. 2003) (INS working with or notifying U.S. Attorney's office did not support allegation of collusion to trigger Speedy Trial Act). Therefore, Perez was not in federal criminal custody until July 11 when the arrest warrant for the April 24 federal indictment was executed. Thus, the government did not violate Rule 5(a).

### C.    Apprendi

Perez argues that 8 U.S.C. § 1326(b)(2) violates the Sixth Amendment principles announced in <u>Apprendi</u>. In <u>Apprendi</u>, the Supreme Court held, "<u>Other than the fact of a prior conviction</u>, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490. Perez pled guilty to the crime of illegal reentry after deportation, which provides a two-year maximum sentence pursuant to § 1326(a). Under § 1326(b)(2), the maximum sentence is twenty years

if the alien had a prior aggravated felony conviction. The district court found Perez had a prior aggravated felony and sentenced him accordingly to 46 months imprisonment under the Sentencing Guidelines. "While a finding that the prior felony conviction qualifies as 'aggravated' is a fact that can increase the defendant's sentence beyond the initially prescribed maximum sentence, the plain language of Apprendi excepts the fact of prior convictions from its holding." United States v. Kempis-Bonola, 287 F.3d 699, 702 (8th Cir.), cert. denied, 123 S. Ct. 295 (2002); see Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998) (§ 1326(b)(2) is a sentencing factor, not a separate criminal offense). Thus, the district court did not violate Apprendi and 8 U.S.C. § 1326(b)(2) does not violate the Sixth Amendment.

## III.  CONCLUSION

For the reasons stated above, we affirm Perez's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.