**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 25, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

ULISES ARGUETA-MEJIA,

    Defendant - Appellee.

No. 14-1244
(D.C. No. 1:13-CR-00379-WJM-1)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.

This appeal concerns application of the exclusionary rule to evidence

flowing from a traffic stop. The stop was made when Officer Martin

Tritschler allegedly saw Mr. Ulises Argueta-Mejia turn left without

signaling. During the stop, the officer learned that Mr. Argueta-Mejia was

an alien who had previously been removed to another country. With this

information, the officer arrested Mr. Argueta-Mejia. After the arrest, an

immigration agent fingerprinted Mr. Argueta-Mejia and used those

fingerprints to obtain his immigration record. With the benefit of the

---

[*]     This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But, the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

immigration record, authorities charged Mr. Argueta-Mejia with illegal reentry into the United States. *See* 8 U.S.C. § 1326(a) (2012).

Claiming the arrest was unlawful, Mr. Argueta-Mejia successfully moved to suppress evidence of post-arrest statements and identifying information. The government appeals, and we must address two issues:

1. *Obviousness of Probable Cause.* The first issue involves the obviousness of probable cause on a charge of illegal reentry into the United States. The defendant insists this argument was waived, and the government urges application of the plain-error standard. For the sake of argument, we can assume that the plain-error standard applies, as the government urges. Under this standard, we ask: Did the district court commit an obvious error by overlooking the existence of probable cause for illegal reentry into the United States? We conclude that if the district court erred, the error would not have been obvious because (a) there was no evidence regarding one element of illegal reentry (the absence of permission to lawfully reenter the country) and (b) we lack precedent on the existence of probable cause in these circumstances.

2. *Application of the Exclusionary Rule.* When a defendant is illegally seized, a court must suppress evidence resulting from that seizure (the "fruit of the poisonous tree"). To avoid suppression, the government had to show that the fingerprints were taken solely because of routine booking procedures; suppression was necessary if the fingerprints had been taken at least in part to aid the government's investigation. Thus, we ask: Did the government show that Mr. Argueta-Mejia's fingerprints were taken solely because of a routine booking procedure? We conclude that the government did not satisfy its burden of proof.

## I. The Suppression of Evidence and the Appeal

In district court, Mr. Argueta-Mejia moved to suppress all evidence of post-arrest statements and identifying information (including the

fingerprints and immigration record). Appellant's App. at 8–14, 29–35. In this motion, Mr. Argueta-Mejia alleged violation of the Fourth Amendment on the ground that Officer Tritschler lacked a legal basis for the traffic stop and arrest. *Id.* at 10, 77–81.

Before starting the hearing on the motion to suppress, the court conducted a status conference. There the government identified two issues, one of which was whether the police officer could make an arrest on a federal charge. *Id.* at 120.[1] Defense counsel identified three issues from his perspective. The second of these issues involved probable cause[2]:

> The second is, assuming that the initial stop was lawful, that there was a turn signal violation that justified the stop, then the continued detention in this case was based upon a note in the NCIC that says that Mr. Argueta-Mejia has immigration—I can't remember exactly, but something along the lines of: Previously deported alien. Contact us.
>
> So the question then becomes—I am phrasing it maybe a little bit differently, but, one, yes, can a state officer arrest somebody based upon an NCIC note that he's previously deported. And even if a state officer could arrest on a sole federal offense, did he have probable cause at that point to believe that some federal offense was being committed? Obviously just because you are previously deported in the past doesn't necessarily mean that you are not lawfully present now.

---

[1]   The other issue was the validity of the stop. Appellant's App. at 120.

[2]   The other two issues involved the validity of the stop and the applicability of the exclusionary rule. Appellant's App. at 120-21.

*Id.* at 121.[3]

Because the government lacked a warrant, the district court correctly placed the burden on the government to demonstrate that Officer Tritschler had acted lawfully. *Id.* at 92; *see United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993). Attempting to meet this burden, the government argued that the arrest was lawful under federal immigration statutes because Officer Tritschler had acted in cooperation with federal immigration officials and had complied with the statutory procedures. Appellant's App. at 40–44; *see* 8 U.S.C. § 1357(g)(10) (2012). But the government never challenged Mr. Argueta-Mejia's argument about the absence of probable cause.

The district court declined to address the issue of probable cause. Instead, the court granted the motion to suppress based on Officer Tritschler's failure to comply with the statutory procedures governing immigration officials.

---

[3]    The defendant's written motion to suppress did not expressly refer to the absence of probable case. But the government did not object to defense counsel's identification of the probable cause issue, and the Federal Rules of Criminal Procedure would have allowed defense counsel to orally supplement the motion to suppress at the status conference. *See United States v. Gonzales-Rodriguez*, 621 F.3d 354, 368 (5th Cir. 2010) ("The Federal Rules of Criminal Procedure permit oral . . . pretrial motions."); *United States v. Perez*, 603 F.3d 44, 49 (D.C. Cir. 2010) ("[T]he [Federal Rules of Criminal Procedure] treat oral and written motions the same."); *see also United States v. Navarro Viayra*, 365 F.3d 790, 792 (9th Cir. 2004) (stating that Fed. R. Crim. P. 47 clearly allows oral motions "even outside the context of a trial or hearing").

On appeal, the government contends the arrest was constitutional because Officer Tritschler had probable cause to believe Mr. Argueta-Mejia was committing the crime of illegal reentry.

## II. Probable Cause: The Absence of an Obvious Error

The defendant argues that the government waived its present argument on probable cause; the government insists on the plain-error standard of review. For the sake of argument, we can assume that the issue was not waived. Even if the government did not waive the argument, however, we would decline to find plain error.[4]

---

[4]   In *United States v. Martinez*, 643 F.3d 1292, 1293 (10th Cir. 2011), the government appealed a district court's suppression order arising from law enforcement's unlawful entry. On appeal, the government made a new argument to justify law enforcement's entry into the defendant's home. *Martinez*, 643 F.3d at 1298. We declined to entertain the government's new argument, stating: "We will not consider a suppression argument raised for the first time on appeal absent a showing of good cause for why it was not raised before the trial court." *Id.*

Mr. Argueta-Mejia relies on *Martinez*, arguing that the government waived its present argument on probable cause. The government contends that *Martinez* simply "assumed" the existence of a waiver. But the government acknowledged in oral argument that the so-called "assumption" in *Martinez* was "not really academic" because it had "consequences" to the decision. Oral Arg. at 2:18-2:51. We need not assess the government's parsing of *Martinez* or decide whether the government waived its newly asserted argument on probable cause. Even if we were to apply the plain-error standard (as the government urges) rather than deem the government's new argument waived (as the defendant urges), the existence of probable cause would not have been sufficiently obvious to merit reversal.

## A.	The Necessity of an Obvious Error

For plain error, the error must be "clear and obvious under current law." *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (quoting *United States v. Fabiano*, 169 F.3d 1299, 1302–03 (10th Cir. 1999)). If the district court had erred, the error would not have been clear or obvious.

## B.	The Absence of an Obvious Error

The district court concluded that (1) Officer Tritschler had failed to comply with 8 U.S.C. § 1357(g) (2012) and (2) the government had not met its burden to demonstrate another lawful reason for the arrest. Appellant's App. at 106–07. In challenging the first conclusion, the government contends that Officer Tritschler did not need to comply with § 1357(g) because it applies only when state officers are performing "immigration officer functions." 8 U.S.C. § 1357(g) (2012).

We agree. The federal constitution allows a state law enforcement officer to make an arrest for any crime, including federal immigration offenses. *See United States v. Santana-Garcia*, 264 F.3d 1188, 1193–94 (10th Cir. 2001) (in the absence of contrary state or local laws, state law enforcement officers can make arrests for violation of federal immigration laws). As a result, we must decide whether probable cause would have been obvious for an arrest on federal charges.

Probable cause exists when the officer has reasonably trustworthy information that would warrant a prudent person's belief that the defendant was committing a criminal offense. *United States v. Rodriguez*, 739 F.3d 481, 485 n.2 (10th Cir. 2013). The parties disagree about the application of this standard to the crime of illegal reentry (8 U.S.C. § 1326(a)).

This crime is committed when

- an alien,

- previously removed from the United States,

- is later found in the United States

- without permission to reenter.

8 U.S.C. § 1326(a) (2012).

We need not decide whether Officer Tritschler had probable cause. *See* p. 10 n.9, below. Even if he did, the district court's error would have constituted plain error only if the existence of probable cause had been obvious. Probable cause would not have been obvious because

- there was no evidence on the fourth element of illegal reentry and

- we have no precedents addressing the existence of probable cause when evidence exists on some but not all of the elements of an offense.

Officer Tritschler had only a report

- stating that Mr. Argueta-Mejia was a felon who had previously been deported and

- containing an unexplained notation of "FUG."[5]

Appellant's App. at 237. A reasonable jurist could conclude that this information did not address whether Mr. Argueta-Mejia had permission to reenter the country.

The government's insistence on probable cause is undermined by its own representations to the district court. Commenting on the routine procedure after discovery that Mr. Argueta-Mejia was a deported felon, the government stated to the district court:

> As I understand the process, ICE is contacted, and they pull up information on the individual that they're contacted about. Based on that information, database checks, I believe they determine whether or not the individual is an alien, confirm the removal and determine whether or not that individual has sought or received permission to come back to the United States.
>
> If all of that information comes back, I guess affirmative, whether or not the individual is an alien or whether or not he has been previously removed from the United States, and in the negative, whether he's received permission to return, then I believe that individual has probable cause that the violation of Title 8, United States Code, Section 1326(a) has been violated.

*Id.* at 133–34.

From this statement, the district court could have understood the government to be acknowledging the absence of probable cause until immigration officials learned whether the alien had obtained permission to reenter. Officer Tritschler did not receive this information until after the

---

[5] Officer Tritschler acknowledged that the computer entry had not shown a warrant for Mr. Argueta-Mejia. Appellant's App. at 176.

-8-

arrest. Therefore, the government's representation to the district court would have clouded any finding that Officer Tritschler had probable cause at the time of the arrest.

The government argues that one can infer the absence of permission to reenter based on the fact of a previous deportation.[6] That inference is possible, but reasonable jurists could also draw the opposite inference; the problem is that we lack any precedential decisions on probable cause without evidence addressing permission to reenter the country.[7]

Even more generally, we lack precedential decisions on the necessity of probable cause for each element of a suspected crime. On that issue, the

---

[6]    In oral argument, the government argued for the first time that permission to reenter is "not that easy to come by." Oral Arg. at 7:01-7:33. We reject this argument for two reasons. First, the argument is waived because it was raised for the first time in oral argument. *See United States v. Burns*, 775 F.3d 1221, 1223 n.2 (10th Cir. 2014). Second, the government has not presented any evidence, either in district court or on appeal, about the difficulties in obtaining permission to reenter or the frequency in which permission is given. In the absence of such evidence, neither our court nor the Supreme Court has ever held that a judge can rely on the infrequency of permission for reentry into the United States. Thus, we cannot base plain error on the government's statement in oral argument that permission to reenter is "not that easy to come by."

[7]    The government relies on a report (an "NCIC" alert), but has not cited any cases regarding the effect of an NCIC alert. Instead, the government relies on *Virginia v. Moore*, 553 U.S. 164 (2008). There the Supreme Court considered whether evidence from an arrest supported by probable cause is admissible when the arrest violated state law. *Moore*, 553 U.S. at 175-78. But we must determine whether the existence of probable cause was obvious, not whether an arrest supported by probable cause would have been lawful. *Moore* does not bear on the obviousness of probable cause from the NCIC alert.

circuits are divided. *Compare Spiegel v. Cortese*, 196 F.3d 717, 724 n.1 (7th Cir. 2000) (stating that probable cause is unnecessary on each element of a crime), *and Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) ("[A]n officer need not have probable cause for every element of the offense."), *with Williams v. Alexander, Ark.*, 772 F.3d 1307, 1312 (8th Cir. 2014) ("For probable cause to exist, there must be probable cause for all elements of the crime."), *and United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013) ("To make an arrest based on probable cause, the arresting officer must have probable cause for each element of the offense."). Neither our court nor the Supreme Court has weighed in on this circuit split.[8]

Without precedent on the issue, we conclude that the district court did not commit a clear or obvious error in failing to find probable cause without at least some evidence on Mr. Argueta-Mejia's permission to reenter the United States after his prior removal.[9]

---

[8]    The Supreme Court has held that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). But the Court has not decided whether probable cause can exist without at least some evidence on every element of a suspected crime.

[9]    We do not suggest how the district court should have ruled on the issue of probable cause. That issue is not before us. We hold only that under the plain-error standard, which the government asks us to apply, the existence of probable cause was not sufficiently clear and obvious to require reversal.

## III. Application of the Exclusionary Rule

In light of the arrest without probable cause, the district court correctly excluded the resulting evidence.

### A. Standard of Review

When a defendant is illegally seized, a court must suppress evidence derived from that seizure that is the improper fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 485–88 (1963). To justify suppression under this doctrine, the defendant must show a factual nexus between the illegal seizure and the challenged evidence. *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000). Once this nexus is shown, the government can avoid suppression only by proving that the evidence "was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Id.*

On review, we accept the district court's factual findings unless they are clearly erroneous. *Id.*

### B. The Suppressed Evidence

The government contends that even if probable cause was absent, the district court erred in suppressing the fingerprints and immigration record because their discovery was attenuated from the illegal arrest. We reject this contention.

The issue is whether "the illegal arrest [was] *in part* for the purpose of obtaining unauthorized fingerprints so Defendant could be connected to

-11-

additional illegal activity." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1116 (10th Cir. 2006) (emphasis added). In *United States v. Olivares-Rangel*, we distinguished between fingerprints obtained to aid an investigation after an illegal arrest (which generally are suppressed) and fingerprints that are obtained merely as part of a routine booking procedure (which generally are not suppressed). *Id.* at 1112–14.

Fingerprinting is

- investigatory if the "purpose of obtaining Defendant's fingerprints [is] to link him to criminal activity" and

- part of the routine booking procedure if the officer seeks to confirm that the "person who has been arrested is in fact the person law enforcement agents believe they have in custody."

*Id.* at 1113, 1116.

The district court found four facts bearing on application of the exclusionary rule:

1. Mr. Argueta-Mejia was arrested because he was a previously deported felon.

2. Officials of the Immigrations and Customs Enforcement Office conducted the booking process, and the agency's entire purpose is to enforce immigration laws.

3. The purpose of the booking process was to obtain Mr. Argueta-Mejia's fingerprints to identify him as a previously deported felon.

4. The fingerprints were obtained to further the investigation of the immigration offense, and the unlawful arrest was exploited for the purpose of obtaining the fingerprints.

Appellant's App. at 110. From these facts, the district court concluded the government had failed to show the absence of an investigatory motive. *Id.*

We agree with the district court. The government bore the burden of proving that the evidence was attenuated from the unlawful arrest (*see* p. 11, above), and the crime hinged on identity and proof that the Attorney General had not granted permission to reenter the country. *See United States v. Pena-Montes*, 589 F.3d 1048, 1058 (10th Cir. 2009) (stating that the critical evidence necessary to convict the defendant of illegal reentry was "identity itself: [the defendant's] fingerprints and related records"); *see also United States v. Garcia-Beltran*, 389 F.3d 864, 868 (9th Cir. 2004) ("[I]n the investigation of immigration offenses, establishing the identity of the suspect is an essential component of such an investigation."). For these aspects of its burden of proof, the government needed Mr. Argueta-Mejia's immigration record. And there is no evidence of the government's ability to retrieve the immigration record without Mr. Argueta-Mejia's fingerprints. In these circumstances, we conclude that the government failed to prove that the evidence had been attenuated from the illegal arrest.

The government acknowledges that the district court made three correct factual findings:

1.	Mr. Argueta-Mejia was arrested because he was a previously deported felon.

-13-

2. The Immigrations and Customs Enforcement Office conducted the booking process.

3. The purpose of the booking process was to obtain Mr. Argueta-Mejia's fingerprints to identify him as a previously deported felon.

But the government argues the district court wrongly interpreted the significance of these findings, claiming that

- the "purpose of the arrest" was not to obtain fingerprints,

- the fingerprints were taken as part of a routine booking procedure, and

- the purpose of fingerprinting Mr. Argueta-Mejia was to verify his identity rather than to obtain additional information.

We reject these arguments. The district court's inferences from these factual findings are subject to clear error review (*see* p. 11, above), and we have no reason to regard these inferences as clearly erroneous.

The government also argues that

- the district court misapplied an Eighth Circuit case (*United States v. Guevara-Martinez*, 262 F.3d 751 (8th Cir. 2001)), and

- exclusion of evidence is unwarranted here in light of the policies surrounding the exclusionary rule.

These arguments are unpersuasive.

First, we cannot reverse based on the district court's reliance on the Eighth Circuit's opinion in *Guevara-Martinez*. There the appellate court held that an investigatory motive may be inferred when a defendant is fingerprinted after an interview with immigration officials. *Guevara-Martinez*, 262 F.3d at 756. That holding arguably applied here because the

-14-

district court found that the fingerprinting of Mr. Argueta-Mejia was motivated at least in part to aid an investigation. Though the Eighth Circuit decision was not precedential in our circuit, it might have been considered persuasive. Regardless of its persuasive value, however, the district court made a factual finding that the government had taken the fingerprints at least in part to aid the investigation. *See* pp. 12-13, above. Whatever we think of the Eighth Circuit's opinion, the district court's factual finding binds us under the clear-error standard.

Finally, we reject the government's policy argument. The policy ramifications of the exclusionary rule can be debated. *See, e.g.*, Donald Dripps, *The Case for the Contingent Exclusionary Rule*, 38 Am. Crim. L. Rev. 1, 5-22 (2001) (discussing the policy arguments for and against the exclusionary rule). But our decision is guided by precedent, not policy considerations. The district court's finding of an investigatory motive compels exclusion under our precedent in *Olivares-Rangel*.

## IV. Conclusion

We affirm the district court's order suppressing the evidence of post-arrest statements and identifying information. Even if the government did not waive the argument on probable cause, we would decline to find a clear or obvious error.

Without the obvious existence of probable cause, the district court had to exclude the evidence if law enforcement officers took the

fingerprints at least in part to aid an investigation into illegal reentry. The district court found such a motive, and we must uphold this finding under the clear-error standard.

Accordingly, we affirm.

Entered for the Court


Robert E. Bacharach
Circuit Judge