

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-26-2006

# USA v. Bowley

Precedential or Non-Precedential: Precedential

Docket No. 05-3460

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"USA v. Bowley" (2006). *2006 Decisions.* Paper 1661.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1661

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No:  05-3460

UNITED STATES OF AMERICA,
Appellant

v.

GARY BOWLEY

Appeal from the District Court
of the Virgin Islands, Division of St. Thomas
and St. John
(Crim. No. 04-cr-00169-1)
District Judge: Hon. Raymond L. Finch, Chief Judge

Argued: December 8, 2005

Before: SCIRICA, Chief Judge, McKEE and
and NYGAARD, Circuit Judges

(Filed: January 26, 2006 )

ANTHONY J. JENKINS, ESQ.
United States Attorney
District of the Virgin Islands
KIM L. CHISHOLM, ESQ.

1

Assistant United States Attorney
District of the Virgin Islands
RICHARD A. FRIEDMAN, ESQ.  (Argued)
Appellate Section, Criminal Division
United States Department of Justice
10th Street & Constitution Avenue, N.W.
Washington, D.C. 20530

Attorneys for Appellant

THURSTON T. McKELVIN, ESQ.
Federal Public Defender
PATRICIA SCHRADER-COOKE, ESQ.  (Argued)
Assistant Federal Public Defender
P.O. Box 1327, 51B Kongens Gade
Charlotte Amalie, St. Thomas, Virgin Islands

Attorneys for Appellee

OPINION

McKEE, Circuit Judge.

We are asked to determine if the district court erred in suppressing certain evidence the government sought to introduce in this prosecution of an illegal alien for illegally reentering the United States.  The evidence the district court suppressed pertained to the alien's identity.  For the reasons that follow, we will reverse and remand to the district court for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

In early August 2004, Sergeant Bernard Hendricks of the Virgin Islands Police Department ("VIPD") was investigating a series of armed robberies in the Coral Bay area of St. John. During the course of that investigation, he learned that Gary Bowley had been involved in those robberies as well as other illegal activities, including drug dealing.  That information was provided by individuals who had previously provided reliable information to the VIPD.   Bowley was known to the VIPD as "Junior."

On August 16, 2004, at approximately 11:30 a.m., Hendricks and another VIPD officer drove to Bowley's residence in their police car.  Upon arriving, they called to Bowley who came out and spoke with the officers.  They asked Bowley if he had any documents that would show that he was lawfully present in the United States.  In response, Bowley admitted that he was in the United States illegally, and he gave the officers a Jamaican passport containing his photograph and the name "Junior Anthony Miller."   Hendricks then asked Bowley if he would accompany them to the police station, and Bowley agreed.

Later that same day, the officers contacted the Office of Immigration and Customs Enforcement ("ICE").  The next day, ICE agents took Bowley and two other illegal aliens to St. Thomas for a hearing before an immigration judge.  At the ICE offices, Bowley's fingerprints (and those of the two other aliens) were electronically scanned. The computer database matched the scan to the fingerprint records of "Gary Bowley."

3

Immigration records showed that Bowley was a citizen of Jamaica who had previously been deported from the United States on November 17, 2000, following convictions for selling marijuana, attempted robbery, possession of a weapon and "bail jumping." After matching the fingerprints, an ICE agent advised Bowley of his *Miranda* rights and Bowley told the agent that he did not want to make a statement.[1] Nevertheless, an ICE agent subsequently questioned Bowley about biographical data such as his parents' names, his occupation, and whether he had any children.

Thereafter, a criminal information was filed charging Bowley with one count of illegally reentering the United States after having been previously deported, in violation of 8 U.S.C. § 1326(a), (b)(2). Bowley responded by filing a motion "to suppress all evidence obtained from him, including his statement that he was illegally in the United States, his passport, his fingerprints, and the statements that he made after refusing to waive his *Miranda* rights." App. 13-14.[2]

At the ensuing suppression hearing, the government argued that the VIPD officers had reasonable suspicion for an

---

[1] *See Miranda v. Arizona*, 384 U.S. 486 (1966).

[2] Since the government did not seek to introduce the biographical information obtained from Bowley after he received his *Miranda* warnings, those statements are not at issue in this appeal.

investigative detention of Bowley from the time they encountered him at his home. The government also argued that Bowley "was not under arrest when he was handcuffed, transported to the police station in St. John, [and] held overnight in a cell . . . but was merely detained pending further diligent investigation." App. 14. The district court denied Bowley's motion in part and granted it in part.

The district court agreed with the government that the VIPD officers had reasonable suspicion to investigate Bowley based on the information they had received from people in the area concerning his involvement in illegal activities including the robberies the police were investigating. The district court based that conclusion on the fact that those people had previously given reliable information, and that their reports corroborated each other. Therefore, the district court denied Bowley's motion to suppress his Jamaican passport as well as his admission that he was illegally in the United States.

However, the district court rejected the government's argument that Bowley was not under arrest when handcuffed, taken to the police station, and held over night. The court held that that detention did constitute an arrest. The court reasoned that, although Bowley was not formally arrested, he was handcuffed and placed in a cell, and that restraint was more than an investigative detention. Rather, it "was akin to arrest." App. 20.

However, since the crime the VIPD officers initially arrested Bowley for (illegal reentry in violation of 8 U.S.C. § 1326(a), (b)(2)) is a misdemeanor, the district court held that

Bowley's arrest was unlawful. Virgin Islands police can only arrest for a misdemeanor when the crime is committed in their presence. *See* 5 V.I.C. § 3562. The district court ruled that "[i]llegal reentry is not a continuing violation, but is completed at the time of entry . . . or when an alien has reached a place of repose within the country." App. 7. Accordingly, Bowley had not violated 8 U.S.C. § 1326(a), (b)(2) in the police officers' presence, and the court therefore concluded that the police officers lacked statutory authority to arrest him.

Accordingly, the court suppressed "all evidence obtained after officers . . . handcuffed [Bowley], placed him in their police vehicle, transported him to the police station and held him there in a cell." App. 11. That included all of the evidence police had gathered about Bowley's identification from the fingerprint scan, his biographical information, and his Jamaican passport. The court found "a close causal connection between [Bowley's] illegal seizure and [that evidence]." App. 20. The court reasoned that suppression of that evidence was necessary "to deter similar police misconduct in the future and to preserve the integrity of the courts." *Id*.

The government did not appeal that suppression order. Instead, at the beginning of trial, it proposed to prove Bowley's illegal reentry by producing the warrant of deportation from his immigration file (including an attached photograph), and offering the testimony of the federal agents who had been present when Bowley was deported. Bowley moved *in limine* to exclude that testimony arguing that the evidence was precluded by the district court's suppression order. The government responded by arguing that Bowley's identity and documents in

6

his immigration file could not be suppressed. The government also claimed that Bowley had lawfully been in the custody of the ICE agents when they scanned his fingerprints.

The district court construed the government's opposition to Bowley's motion *in limine* as a motion to reconsider its original suppression order. It granted reconsideration, but denied the motion to reconsider on the merits. Although the court agreed that identity cannot be suppressed, it ruled that "a defendant's body and identity cannot be suppressed only in the sense that . . . a defendant whose identity is discovered through unconstitutional means may be physically brought to trial and tried under his or her true name." App. at 7-10. The court reasoned, however, that "the elements of the charged crime, including Defendant's identity, must be proved using untainted evidence," and the discovery of Bowley's identity was the fruit of his illegal arrest. App. 7.

The district court also rejected the government's argument that the scan of his fingerprints was proper because it was part of administratively processing a suspected illegal alien. The district court concluded that although Bowley's custody by ICE was itself legal, it was the fruit of Bowley's illegal arrest by the VIPD. In rejecting the government's claim that Bowley's identity was admissible as part of a routine booking procedure as opposed to a criminal investigation, the district court held that "[t]he fingerprint impressions were taken to investigat[e] Defendant's immigration status and therefore are not admissible to prove Defendant's identity." App. 9.

The district court also rejected the government's

7

alternative argument that police would have inevitably discovered Bowley's identity once he admitted that he was in the United States illegally. The court reasoned that "an ICE arrest of Defendant was not inevitable even after the VIPD learned that he was present in the United States illegally," because Bowley "could have evaded detection by the ICE, if he had not been arrested by the VIPD." App. 8. Finally, the district court rejected the government's proffered reliance on the testimony of federal agents who participated in Bowley's prior deportation. The court ruled that those witnesses were discovered after the fact and were also the fruit of Bowley's illegal arrest and fingerprinting.

This appeal by the government followed.[3]

---

[3] We have jurisdiction of this interlocutory appeal pursuant to 18 U.S.C. § 3731, captioned "Appeal by the United States," which provides, in relevant part, as follows:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material

## II. DISCUSSION

The government argues that even if Bowley's arrest by the VIPD was illegal, evidence the government sought to introduce regarding his true identity and his prior deportation is admissible because such evidence is not subject to suppression. We agree.

In *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984), the Supreme Court stated: "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."[4]  *Lopez-Mendoza* concerned "the exclusion of credible evidence gathered in connection with peaceful arrests by INS officers." *Id*. at 1051. Here, of course, we are concerned with illegally obtained evidence that was to be introduced in a criminal prosecution rather than in a civil prosecution; as was the case in *Lopez-Mendoza*.

Nevertheless, we doubt that the Court lightly used such a sweeping word as "never" in deciding when identity may be suppressed as the fruit of an illegal search of arrest. *See United*

---

in the proceeding.

[4] *Lopez-Mendoza* concerned "the exclusion of credible evidence gathered in connection with peaceful arrests by INS officers." *Id*. at 1051.

9

*States v. Del Toro Gudino*, 376 F.3d 997, 1000-01 (9ᵗʰ Cir. 2004) (noting the Court's "exceptionally broad statement, using the rarely employed word "never").

The Court in *Lopez-Mendoza* was careful to qualify its broad statement by noting that it was not considering "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." 486 U.S. at 1051. Similarly, we are not here concerned with any such egregious transgression either.

Although we have not previously addressed this precise question, a number of other courts of appeals have addressed it, and each has refused to suppress a defendant's immigration file or identity in the context of a criminal prosecution for illegal reentry in violation of § 1326. *See, e.g., United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005); *United States v. Del Toro Gudino, supra*; *United States v. Roque-Villaneuva*, 175 F.3d 345 (5th Cir. 1999); *United States v. Guzman-Bruno*, 27 F.3d 420 (9th Cir. 1994). Furthermore, an alien charged with illegal reentry has no possessory or proprietary interest in his/her immigration file or the documentary evidence contained in that file. *United States v. Pineda-Chinchilla*, 712 F.2d 942, 943-44 (5th Cir. 1983). Similarly, an alien has no reasonable expectation of privacy in a file that is maintained solely by a government agency for official purposes and kept in the custody of that agency. Accordingly, absent the kind of egregious circumstances referred to in *Lopez-Mendoza*, we hold that the Fourth Amendment does not provide a basis for an alien to suppress his/her immigration file, or information in that file. *Id.; see also Hoonsilapa v. INS*, 575 F.2d 735, 738 (9th Cir.

10

1978) ("[T]here is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other indepent evidence."), *modified on other grounds*, 586 F.2d 755 (9th Cir. 1978).

## III. CONCLUSION

For the above reasons, we will reverse the district court's June 8, 2005, suppression order.

_____