E. GRADY JOLLY, Circuit Judge,
Specially Concurring.
While the majority’s affirmance is correct given our binding precedent, I respectfully submit that this precedent is based on a misapplication of the Supreme Court’s holding in I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). In Roque-Villa-nueva, this Court summarily concluded that no evidence pertaining to an illegal alien’s identity is suppressible, predicating this finding upon a statement by the Supreme Court in Lopez-Mendoza that “[t]he ‘body’ or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.” Roque-Villanueva^ 175 F.3d at 346 (quoting Lopez-Mendoza, 468 U.S. at 1039,104 S.Ct. 3479).
In the time since we decided Roque-Villanueva, however, other circuits have attempted to answer the question of whether an alien’s identity may ever be suppressible, and have come to conflicting conclusions as to the proposition for which Lopez-Mendoza truly stands. Indeed, the Fourth Circuit recently noted that “[t]he meaning of the Lopez-Mendoza ‘identity statement’ has bedeviled and divided our sister circuits.”[1] United States v. Oscar-Torres, 507 F.3d 224, 228 (4th Cir.2007). The issue dividing the circuits is whether the Lopez-Mendoza statement simply recognizes an established jurisdictional rule, i.e., that an unlawful arrest does not deprive a court of jurisdiction over the arres-tee, or, instead, whether the statement establishes a blanket rule that a defendant’s identity — and any evidence related to that identity — is never suppressible. Compare Oscar-Torres, 507 F.3d at 228-29 (interpreting Lopez-Mendoza as merely reiterating long-standing jurisdictional rule), and United States v. Olivares-Ran *352 gel, 458 F.3d 1104, 1106 (10th Cir.2006) (same), and United States v. Guevara-Martinez, 262 F.3d 751, 754-55 (8th Cir.2001) (same), with United States v. Bowley, 435 F.3d 426, 430-31 (3d Cir.2006) (interpreting Lopez-Mendoza as barring suppression of evidence of identity), United States v. Navarro-Diaz, 420 F.3d 581, 588 (6th Cir.2005) (same), and Roque-Villanueva, 175 F.3d at 346 (same). This is an issue with which this court has never truly grappled, notwithstanding our prece-dential holdings.
I.
To explain the circuit split, it is useful first to consider the facts of Lopez-Mendoza itself. This case involved two defendants, Adan Lopez-Mendoza and Elias Sandoval-Sanchez. 468 U.S. at 1034, 104 S.Ct. 3479. Lopez-Mendoza was arrested in 1976 by INS agents at his place of employment, a transmission repair shop in San Mateo, California. 468 U.S. at 1035, 104 S.Ct. 3479. The INS agents arrived in response to a tip; they had not sought a warrant, and the shop’s proprietor refused to permit them to interview his employees during work hours. Id. One agent nevertheless approached Lopez-Mendoza, who, in response to the agent’s questions, gave his name and indicated he was from Mexico and had no close family ties in the United States. Id. The agent arrested Lopez-Mendoza, and after further questioning, Lopez-Mendoza admitted he was born in Mexico, was still a Mexican citizen, and had entered the U.S. without inspection by immigration authorities. Id. The agents then prepared a “Record of Deport-able Alien” (Form 1-213) and an affidavit Lopez-Mendoza executed that admitted his Mexican nationality and his illegal entry. Id.
Later, at a deportation hearing before an immigration judge, Lopez-Mendoza’s counsel moved to terminate the proceeding on the ground that Lopez-Mendoza had been unlawfully arrested. Id. The judge, however, ruled the lawfulness of Lopez-Mendoza’s arrest was irrelevant to his deportation. Id. On appeal, the BIA similarly found “[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding,” and, furthermore, found Lopez-Mendoza had not objected to the admission of evidence in the Form I-213 or his affidavit. Id. at 1036, 104 S.Ct. 3479. The Ninth Circuit, sitting en banc, vacated Lopez-Mendoza’s deportation order and remanded for a determination as to whether Lopez-Mendoza’s Fourth Amendment rights had been violated when he was arrested. Id.
Finally, the case reached the Supreme Court. It conducted a brief analysis of Lopez-Mendoza’s claim, which began with the “identity statement,” i.e., “[t]he ‘body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.” Id. (emphasis added). The Court noted that, on that basis alone, Lopez-Mendoza’s claim failed. Id. at 1040, 104 S.Ct. 3479. It further found that “Lopez-Mendoza objected only to the fact that he had been summoned to a deportation hearing following an unlawful arrest; he entered no objection to the evidence offered against him.” Id. Reasoning the mere existence of an unlawful arrest has no implications in a later deportation proceeding, the Court reversed the Ninth Circuit’s judgment. Id.
Sandoval-Sanchez, the defendant in the companion case to Lopez-Mendoza, was similarly questioned and arrested by INS workers at his place of employment, and later admitted he had unlawfully entered the United States. He argued that he *353 made the admission because he was unaware he had a right to remain silent. Id. at 1036-37, 104 S.Ct. 3479. At his deportation hearing, Sandoval-Sanchez contended that the evidence offered by the INS should be suppressed as fruit of an unlawful arrest. Id. at 1037, 104 S.Ct. 3479. The immigration judge determined not only that Sandoval-Sanchez had not been unlawfully arrested, but further that the legality of an arrest was immaterial to a deportation hearing. Id. For similar reasons, the BIA dismissed Sandoval-Sanchez’s appeal. Id. at 1038, 104 S.Ct. 3479. Sitting en banc, the Ninth Circuit reversed Sandoval-Sanehez’s deportation order, holding that because his detention violated the Fourth Amendment, his statements were a product of that detention and the exclusionary rule barred their use in a deportation hearing. Id.
The question before the Supreme Court was then “whether an admission of unlawful presence in this country made subsequent to an allegedly unlawful arrest must be excluded as evidence in a civil deportation hearing.” 468 U.S. at 1034, 104 S.Ct. 3479 (emphasis added). The Court first noted “the general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct are not too attenuated.” Id. at 1040-41, 104 S.Ct. 3479. The Court then weighed the likely social benefits of excluding the unlawfully seized evidence against the likely costs, per the framework established in United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), and ultimately concluded “evidence derived from such [unlawful] arrests need not be suppressed in an INS civil deportation hearing.” 468 U.S. at 1051, 104 S.Ct. 3479.
II.
In applying Lopez-Mendoza, other circuit courts have grappled with reconciling the broad language of the “identity statement” with the facts and issues presented in the case. The Fourth, Eighth, and Tenth Circuits — which concluded the “identity statement” was only a jurisdictional proposition — began their analyses of the case by noting that all of the cases to which the Court cited for the proposition that a defendant’s body or identity is not suppressible addressed a court’s jurisdiction over a defendant himself — not suppression of unlawfully obtained evidence relating to his identity. See, e.g., Oscar-Torres, 507 F.3d at 228 (“Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (reaffirming the ‘established rule that illegal arrest or detention does not void a subsequent conviction’); Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952) (‘[T]he power of a court to try a person for crime is not impaired by the fact that he had been brought within the court’s jurisdiction by reason of a forcible abduction.’); United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221 (1923) (‘Irregularities on the part of the Government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law.’)”); see also Olivares-Rangel, 458 F.3d at 1111; Guevara-Martinez, 262 F.3d at 754. The Fourth Circuit, citing the Tenth Circuit, further found these citations telling — they “indieate[ ] that the Court’s ‘identity statement’ simply references ‘the long-standing rule, known as the Ker-Frisbie doctrine, that illegal police activity affects only the admissibility of evidence; it does not affect the jurisdiction of the trial court or otherwise serve as a basis for dismissing the prosecution.’ ” Os-ear-Torres, 507 F.3d at 228 (quoting Oli-vares-Rangel, 458 F.3d at 1110).
*354 Each court then addressed the context in which the Supreme Court uttered the “identity statement,” finding it further supported the conclusion that this was a jurisdictional holding. They noted that the Court stated “[t]he ‘body or identity of a defendant ... is never itself suppressible” in response to Lopez-Mendoza’s contention that the immigration court lacked personal jurisdiction over him due to the illegal arrest, see Olivares-Rangel, 458 F.3d at 1111; but, in contrast, when analyzing Sandoval-Sanchez’s claim that specific evidence — inter alia, his statement that he entered the United States unlawfully — was inadmissible, the court referred to the “general rule in a criminal proceeding.” Guevara-Martinez, 262 F.3d at 754. The Eighth Circuit found
it significant that the Supreme Court didn’t distinguish between identity-related evidence and other types of evidence when discussing Sandoval-Sanchez’s evi-dentiary challenge.... If the Supreme Court meant to exempt identity-related evidence in a criminal proceeding from the “general rule,” we believe the Court would have said so while discussing the evidentiary challenge, not the jurisdictional challenge. Our belief is strengthened by the fact that the evidence that Sandoval-Sanchez challenged, INS Form 1-213, probably contained identity-related evidence.[2]
Id. The Fourth Circuit similarly reasoned that, “if the Court’s ‘identity statement’ truly prohibited suppression of any evidence relating to identity, surely the Court would have considered which of Sandoval-Sanchez’s statements were sufficiently identity-related to render them beyond the reach of the exclusionary rule and which were not.” Oscar-Torres, 507 F.3d at 229. And the Tenth Circuit held
The language in Lopez-Mendoza merely says that the defendant cannot suppress the entire issue of his identity. A defendant may still seek suppression of specific pieces of evidence (such as, say, fingerprints or statements) under the ordinary rules announced in Mapp [v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ] and Wong Sun [v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ]. A broader reading of Lopez-Mendoza would give the police carte blanche powers to engage in any manner of unconstitutional conduct to long as their purpose was limited to establishing a defendant’s identity. We do not believe the Supreme Court intended Lopez-Mendoza to be given such a reading.
Olivares-Rangel, 458 F.3d at 1111 (emphasis added).
Contrary to the conclusions of these three circuits, this Circuit and the Third and Sixth Circuits have concluded that Lopez-Mendoza stands for the proposition that a defendant’s identity is never suppressible. See Roque-Villanueva, 175 F.3d at 346; Navarro-Diaz, 420 F.3d at 588; United States v. Bowley, 435 F.3d 426 (3d Cir.2006). None explicitly addressed the analysis the Fourth, Eighth, and Tenth Circuits presented distinguishing between the jurisdictional and eviden-tiary holdings of Lopez-Mendoza. Instead, this Court established a blanket rule, whereas the Sixth Circuit seemed to focus upon a distinction between attempts to suppress evidence of the defendant’s identity, such as his name and birthday, and other evidence, such as fingerprints. *355 Navarro-Diaz, 420 F.3d at 586-88. Moreover, the Sixth Circuit found that this reading of Lopez-Mendoza does not lead to the dangerous overreach the Tenth Circuit identified, because “we do not deal here with egregious violations of [the] Fourth Amendment or other liberties that might transgress notions of fundamental fairness.” Id. at 587 (quoting Lopez-Mendoza, 468 U.S. at 1050, 104 S.Ct. 3479). The Third Circuit similarly “doubt[ed] that the Court lightly used such a sweeping word as ‘never’ in deciding when identity may be suppressed as the fruit of an illegal search o[r] arrest,” and found the Court’s only qualification on this rule was that it was not considering “egregious violations of [the] Fourth Amendment.” Bowley, 435 F.3d at 430.
III.
All the Circuits seem to agree that if a defendant sought only to suppress his identity itself, he would fail. This conclusion aligns with Lopez-Mendoza’s finding that Lopez-Mendoza’s claim failed, in part, because “he entered no objection to the evidence offered against him.” 468 U.S. at 1040,104 S.Ct. 3479.
The Fourth, Eighth, and Tenth Circuits, however, correctly distinguish between such a broad attempt to suppress one’s identity itself and an attempt to suppress evidence relating to one’s identity, such as statements made during an unlawful arrest. Indeed, the Supreme Court in Lopez-Mendoza seemed to suggest this analysis; it framed the issue in that case as “whether an admission of unlawful presence in this country made subsequent to an allegedly unlawful arrest must be excluded as evidence in a civil deportation hearing.” Id. at 1034, 104 S.Ct. 3479 (emphasis added). After posing this question — and after stating “[t]he ‘body’ or identity of a defendant ... is never itself suppressible” — the Court turned to Sandoval-Sanchez’s contention that his admission that he entered the United States unlawfully was suppressible. Id. at 1039, 104 S.Ct. 3479 (emphasis added). The court did not summarily conclude that such an admission is not suppressible because one’s identity is not suppressible; instead, the Court referred to the “general rule” regarding suppressibility in a criminal proceeding, and conducted the Jams balancing test. The Court found such an analysis necessary in order ultimately to conclude that such statements need not be suppressed in the civil deportation hearing. Id. at 1040-51, 104 S.Ct. 3479. If the Court had been saying that statements relating to one’s identity were never suppressible, this rigorous analysis of the costs and benefits of excluding such evidence in a civil deportation hearing would have been wholly superfluous. I virtually repeat myself to observe, as the Fourth, Eighth, and Tenth Circuits highlighted, that if evidence relating to identity were excluded from the general rule, the Court almost certainly would have said so, rather than treating it as it would treat any other potentially suppressible evidence.
On the other hand, the Sixth Circuit’s reasoning may be considered as suggesting that some of the alleged evidence is not independent from one’s identity, but is so inherently intertwined with one’s identity that it necessarily is tantamount to identity itself. Such evidence, it reasons, includes a person’s name and birthday. Other circuits have not addressed these particular associations with identity.[3] The *356 Tenth Circuit in Olivares-Rangel did, however, find an alien’s statements — including that he was an illegal alien — -were suppressible. 458 F.3d at 1112. It is not immediately clear whether the Sixth Circuit’s conclusion is consonant with Lopez-Mendoza. In that case, the Supreme Court clearly evaluated whether Sandoval-Sanchez’s statement that he unlawfully entered the United States was suppressible. See 468 U.S. at 1034, 104 S.Ct. 3479. But it is not obvious what other, if any, statements of his the Court was considering. In any event, the reasoning of the Sixth Circuit cannot be dismissed out of hand.
Finally, I should make reference to the odd suggestion of the Third and Sixth Circuits to the effect that we are not dealing with “egregious violations of [the] Fourth Amendment or other liberties that might transgress notions of fundamental fairness” in this criminal case. 420 F.3d at 587 (quoting Lopez-Mendoza, 468 U.S. at 1050, 104 S.Ct. 3479). This “take” from Lopez-Mendoza represents a further misreading of that case. Although it is certainly true that the Supreme Court observed that no egregious violation occurred in Lopez-Mendoza, it made that statement only when it was evaluating Sandoval-Sanchez’s argument that statements he made during his illegal arrest should be suppressed in his subsequent civil deportation hearing. Furthermore, the Supreme Court in Lopez-Mendoza went to great length to describe the important differences between criminal and civil proceedings, noting not only that civil deportation hearings look prospectively to a defendant’s right to remain in the country whereas criminal proceedings seek to punish past behavior, but further making clear that “various protections that apply in the context of a criminal trial do not apply in a deportation hearing.”[4] 468 U.S. at 1038-39, 104 S.Ct. 3479; see also id. at 1042-50, 104 S.Ct. 3479.
IV.
Hernandez has moved to suppress all the evidence derived from the unlawful stop he endured, and not merely to suppress his identity. It is unclear from the record of this case whether Hernandez made statements to the agents, such as those Sandoval-Sanchez made in Lopez-Mendoza, that could potentially be suppressible. Therefore, the proper disposition of this case — but for our precedent— would be to remand for further development of the record. And as the Tenth Circuit noted, allowing our erroneous interpretation of Lopez-Mendoza to persist essentially affords law enforcement officers staggering authority to detain anyone they suspect of being an illegal alien, for so long as they retrieve only evidence related to that person’s identity, they will escape any ramifications for even grossly unconstitutional behavior. Thus, while precedent requires me to concur with the majority, I hope I have made clear that our precedent is an incomplete and erroneous reflection of the propositions for which Lopez-Mendoza stands.

. That court further noted the Ninth Circuit’s view does not even appear consistent. 507 F.3d at 228 n. 2 (citing United States v. Garcia-Beltran, 389 F.3d 864, 868 (9th Cir.2004); United States v. Guzman-Bruno, 27 F.3d 420, 422 (9th Cir.1994)).

. Note that the Supreme Court explicitly framed the issue in Lopez-Mendoza as “whether an admission of unlawful presence in this country made subsequent to an allegedly unlawful arrest must be excluded as evidence in a civil deportation hearing.” 468 U.S. at 1034, 104 S.Ct. 3479 (emphasis added).

. The Tenth Circuit did, in an unpublished opinion, interpret Lopez-Mendoza as preventing suppression of a defendant’s statement of his name to an officer. United States v. Cisneros-Cruz, 185 F.3d 875, No. 98-1398, 1999 *356 WL 444926, at *6 (10th Cir. June 30, 1999) (unpublished).

. Moreover, the Court noted "the INS has its own comprehensive scheme for deterring Fourth Amendment violations by its officers.” 468 U.S. at 1044, 104 S.Ct. 3479.